

DA 07-0461

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 166

IN THE MATTER OF DECLARING

B.P. and A.P.

    Youths in Need of Care.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DN 1999-001
Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Timothy J. Whalen, Attorney at Law, Laurel, Montana

        For Appellee:

            Leanne M. Schraudner, Attorney at Law, Bozeman, Montana

Submitted on Briefs:  January 29, 2008

Decided:  May 13, 2008

Filed:

_____
                     Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     R.P., mother of B.P. and A.P., appeals the Montana Eighteenth Judicial District Court's order denying her motion to dismiss.  We reverse and remand.

## ISSUE

¶2     A restatement of the issue is:

¶3     Did the District Court abuse its discretion in refusing to relinquish jurisdiction over the proceeding involving B.P. and A.P.?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     B.P. was born in July 1989, and A.P. was born in July 1993.  They are the children of R.P. (hereinafter "Mother") and T.P. (hereinafter "Father").  Mother and Father were divorced in April 1996 and the children remained in Mother's custody in Montana. Shortly after the divorce Father moved to California.  Beginning in November 1996 the Montana Department of Public Health and Human Services (Department) began receiving calls from concerned persons regarding the children's and Mother's extremely inappropriate behavior.  Ultimately the Department was authorized to conduct temporary investigations and provide protective services.  In February 1999 the District Court ordered the children be removed from Mother's home and placed in therapeutic foster care.  Mother appealed this order to the Montana Supreme Court and we affirmed the District Court.

¶5     While the appeal was pending, the children, with court permission, traveled to California to spend six weeks with their father beginning in July 1999.  During this time Father sought and was granted permission to keep the children in California until the next

adjudicatory hearing on the Department's authority. In June 2000 the Department notified the District Court that it no longer wished to pursue temporary legal custody over the children as they were thriving under the care of their father in California. Subsequently in July 2000 the District Court held an adjudicatory hearing and took extensive testimony. In October 2000 the District Court issued its Findings of Fact, Conclusions of Law and Order ("custody order"). The court found that Mother had emotionally abused the children, and ordered that the children be permanently placed with their father. The court prohibited Mother from having any contact with the children until "such time as she has addressed her psychological disorders with the ongoing treatment of a psychologist or counselor in conjunction with a licensed psychiatrist."

¶6 In its custody order, the court also specified the means by which Mother could resume contact with her children, after "she acknowledges her responsibility in emotionally abusing the[] children." The court ordered Mother to seek psychological treatment and counseling. After she made sufficient improvement, and at the discretion of her treating psychologist and the children's counselor, she could slowly re-establish contact with the children according to the court's plan. Mother appealed the court's Order. In November 2001 we affirmed the District Court's custody order.

¶7 Following the court's custody order, the children remained in California with their Father, where they have lived since July 1999. Mother relocated to Minnesota in the fall of 2002 and has not lived in Montana since that time. The State of Montana has had no contact with any of the family members since 2002.

¶8 In September 2005 Mother violated the Montana court's custody order by surprising Father and the children in California with an unauthorized visit. After Mother's unannounced visit, Father registered the Montana District Court's custody order with the California courts, so that the terms of the custody order could be enforced in California if necessary. Pursuant to Cal. Fam. Code Ann. § 3445 (West 2004), Mother received notice that Father had registered an out-of-state custody decree with the California courts. This notice explained that Mother had the right to contest the validity of the out-of-state decree by requesting a hearing within 20 days of the mailing of the notice. Mother did not request a hearing, and so the decree was confirmed.

¶9 In March 2007 Mother filed a "Motion to Dismiss" in the Montana Eighteenth Judicial District Court on the grounds that the Montana District Court no longer had jurisdiction over the matter because none of the parties lived in Montana. Mother sought the Montana District Court's relinquishment of jurisdiction over the proceeding. The District Court denied her motion to dismiss, and this appeal followed.

¶10 We note that in July 2007, B.P. turned 18 years old and is no longer subject to these proceedings.

## STANDARD OF REVIEW

¶11 We review a district court's decision on a motion to decline jurisdiction for abuse of discretion. *In re Marriage of Fontenot*, 2003 MT 242, ¶ 11, 317 Mont. 298, ¶ 11, 77 P.3d 206, ¶ 11, *rev'd in part on other grounds in In re Marriage of Fontenot*, 2006 MT 324, 335 Mont. 79, 149 P.3d 28.

## DISCUSSION

¶12   *Did the District Court abuse its discretion in refusing to relinquish jurisdiction over the proceeding involving B.P. and A.P.?*

¶13   Mother wishes to pursue an action for visitation in California. Accordingly, she sought to have the Montana District Court "dismiss" the youth-in-need-of-care proceeding that originated in Montana in 1999. While styled a "Motion to Dismiss," the sole relief requested in Mother's motion is the Montana District Court's relinquishment of jurisdiction. She argues that pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), codified under Title 40 of the Montana Code Annotated, the Montana District Court no longer has jurisdiction over these proceedings.

¶14   In response, Father argues that since the proceedings in the instant case were initiated under Title 41 (as opposed to Title 40), the UCCJEA does not apply. Title 41 governs abuse and neglect proceedings, which is the type of proceeding initiated in this case in 1999. Title 41 contains a unique jurisdictional provision, which provides in relevant part: "In all matters arising under this chapter, the district court has jurisdiction over . . . a youth or other person subject to this chapter who under a temporary or permanent order of the court has voluntarily or involuntarily left the state or the jurisdiction of the court[.]" Section 41-3-103(1)(b), MCA. Father cites this provision in support of his contention that the District Court properly retained jurisdiction. Father also argues that "dismissal" of the abuse and neglect proceedings would "nullify" the Montana District Court's custody order and eliminate the protections afforded by it.

¶15   The Department filed a brief in response to Mother's motion to dismiss. The Department pointed out to the District Court that it no longer had a "legal interest" in this

matter, having permanently placed these children in the custody of their father in accordance with the court's final custody order issued in October 2000. At that time the agency closed its case file. The DPHHS also opined that "this is an issue of comity in which a valid order has been entered in a Montana Court and California has adopted that order. The Montana order is valid and has been registered in California. At this time, it is appropriate for this case to proceed under the appropriate child custody laws, not under the child abuse and neglect laws of Montana."

¶16 The District Court provided no findings in its order denying Mother's motion, explaining simply that "the last order entered by this [c]ourt is a viable order and this [c]ourt retains jurisdiction." It further stated that the last order "expressly provided for a mechanism by which mother could seek and maintain contact with the children. That order is valid and remains in effect, no matter in which [c]ourt(s) it may have been filed. Until and unless mother provides proof of compliance with the terms of that order, this [c]ourt will not consider any further motions from mother."

¶17 The statute relied on by Father, § 41-3-103(1)(b), MCA, was enacted in 1974, and was part of the Uniform Child Custody Jurisdiction Act ("UCCJA"), the predecessor to the UCCJEA. The UCCJA was weaker than its successor in many ways, especially in that it was unclear whether the UCCJA applied solely to child custody determinations, or also to child abuse and neglect proceedings. In 1997, the National Conference of Commissioners on Uniform State Laws remedied this and other ambiguities by adopting the UCCJEA. The official comments to the UCCJEA illuminate this deliberate change in UCCJEA's scope:

The definition of custody proceeding in the UCCJA is ambiguous. States have rendered conflicting decisions regarding certain types of proceedings. There is no general agreement on whether the UCCJA applies to neglect, abuse, dependency, wardship, guardianship, termination of parental rights, and protection from domestic violence proceedings. The UCCJEA includes a sweeping definition that, with the exception of adoption, includes virtually all cases that can involve custody of or visitation with a child as a "custody determination."

UCCJEA, 9 U.L.A. 651-52.

¶18 Montana and many other states, including California, adopted the UCCJEA in 1999, which repealed and replaced all of the provisions of the UCCJA. *Paslov v. Cox*, 2004 MT 325, ¶ 25, 324 Mont. 94, ¶ 25, 104 P.3d 1025, ¶ 25. The expanded reach of the UCCJEA is codified in Montana at § 40-7-103(4)(a), MCA, which defines "child custody proceeding" as:

[A] proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear.

Section 40-7-103(4)(a), MCA. In sum, both the UCCJEA drafters and the states which adopted it clearly intended to expand the reach of the statute to include child abuse and neglect proceedings. Thus, to the extent that § 41-3-103, MCA, and § 40-7-103(4)(a), MCA, conflict, § 40-7-103(4)(a), MCA, must prevail. *See e.g. Ross v. City of Great Falls*, 1998 MT 276, ¶ 18, 291 Mont. 377, ¶ 18, 967 P.2d 1103, ¶ 18 (holding that the later-enacted statute prevails, especially in light of clear legislative intent). The Montana District Court's final order in the youth-in-need-of-care proceeding underlying this case expressly addressed custody and visitation involving B.P. and A.P.; consequently, the

7

proceedings in the instant case are governed by the jurisdictional provisions of the UCCJEA.

¶19 The relevant jurisdictional provision of the UCCJEA is § 40-7-202(1), MCA, which provides that:

> [A] court of this state that has made a child custody determination consistent with 40-7-201 or 40-7-203 has exclusive, continuing jurisdiction over the determination until:
> (a) a court of this state determines that neither the child, the child and one parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
> (b) a court of this sate or a court of another state determines that neither the child, a parent, nor any person acting as a parent presently resides in this state.

Under this statute, the Montana District Court retains "exclusive, continuing jurisdiction" over this matter until one of the two specific events described in subsections (a) or (b) occurs. These subsections are neither arbitrary nor confusing. The statute unequivocally states that exclusive and continuing jurisdiction exists *until* a court in this state determines that none of the relevant parties reside in Montana. While it is undisputed and well-documented that none of the relevant parties reside in Montana, the District Court merely stated in its order that Father and children do not live in Montana. Whether this was an oversight or an attempt to retain jurisdiction when jurisdiction was no longer authorized, the District Court was obligated to apply this statute, make such a determination and relinquish jurisdiction over this matter. Failure to do so constitutes an abuse of discretion.

8

¶20    Due to the cursory nature of the District Court's order of dismissal, we cannot determine whether it was persuaded by Father's concern that "dismissal" of the proceeding would nullify the court's final order in which Father was granted custody and appropriate restrictions were placed on Mother's rights. We therefore address Father's concern.

¶21    Under the UCCJEA, California must recognize and enforce Montana's decrees. The California statute provides: "A court of this state shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with [the UCCJEA]." Cal. Fam. Code Ann. § 3443 (West 2004). No one disputes that the Montana District Court exercised legitimate jurisdiction when it issued the child custody determination. Additionally, as noted above, Father has registered the Montana custody order in California for the express purpose of California enforcement. Section 3445(a) of the California Code provides that "[a] child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement." Under these provisions, upon registration or after registration, Father may seek enforcement in California of Montana's custody order.

¶22    In addition to being able to enforce the custody order, California may also modify the order under Cal. Fam. Code Ann. § 3423, which is California's counterpart to § 40-7-203, MCA. Both statutes provide that a state court may modify another state court's custody order if the modifying court meets the requirements necessary to make an initial determination (e.g., residency of children, parent(s), significant connection) and

9

the modifying court or the initial court determines that none of the relevant parties reside in the state where the initial custody order was issued. Given this Court's determination that neither the children nor their parents live in Montana, and the fact that the children and Father reside in California, the two necessary prerequisites to California jurisdiction over this matter are met.

¶23 Lastly, Mother acknowledges on appeal that while she called her motion a "Motion to Dismiss," she was seeking transfer of jurisdiction. Under the circumstances of this case and in light of the exclusive relief sought by Mother—relinquishment of jurisdiction—the District Court was obligated to apply the relevant jurisdictional provisions of the UCCJEA. Application of such required a determination that none of the relevant parties resided in the state of Montana and that Montana no longer had exclusive, continuing jurisdiction over the matter. The District Court should have issued an order relinquishing jurisdiction. The court abused its discretion in failing to do so.

## CONCLUSION

¶24 For the foregoing reasons, we reverse and remand to the District Court with instructions to enter an order relinquishing jurisdiction over the Montana custody order.

/S/ PATRICIA COTTER

We concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER

10

/S/ JAMES C. NELSON
/S/ JIM RICE


Justice W. William Leaphart, dissenting.


¶25    I dissent from the Majority's opinion because there were no ongoing proceedings for the District Court to dismiss in the instant case.  As a result, I would affirm the District Court's denial of Mother's motion to dismiss.

¶26    The District Court's March 18, 2000 Order adjudicated the children youths in need of care, and approved the Department's request to award permanent custody to Father under § 41-3-406, MCA (now § 41-3-438, MCA).  The court's Order giving Father permanent custody of the children is a final order for the purposes of M. R. App. P. 4, which Mother appealed, and we affirmed.  *In re B.P.*, 2001 MT 219, 306 Mont. 430, 35 P.3d 291.

¶27    All abuse and neglect proceedings concerning B.P. and A.P. were concluded with the District Court's March 18, 2000 Order.  Once the children were placed with Father, they were removed from the circumstances which placed them in danger of abuse or neglect.  As a result, both the Department and the District Court's jurisdiction over the proceedings came to an end.  *See e.g. In re A.C.*, 2004 MT 320, ¶ 17, 324 Mont. 58, ¶ 17, 101 P.3d 761, ¶ 17 (placing children with their non-custodial parent who lived out-of-state, and holding that the permanent placement "reliev[ed] the Department from any

11

further obligation, as the concern for them being youths in need of care was eliminated by such placement.").

¶28 Should Mother or Father wish to modify the existing custody order, entered by the Montana District Court and registered with the California courts, they are free to file the appropriate civil action to do so. In the instant case, however, the District Court properly denied Mother's motion to dismiss, since all proceedings in this case were resolved by the court's final judgment issued on March 18, 2000.

/S/ W. WILLIAM LEAPHART

Justice Brian Morris joins in the foregoing dissent of Justice W. William Leaphart.

/S/ BRIAN MORRIS