Justice Laurie McKinnon delivered the Opinion of the Court.
***215 ¶1 A.B. (Mother) appeals an order from the Fourth Judicial District Court, Missoula County, that denied her motion to set aside her earlier conditional relinquishment of parental rights, terminated her parental rights, and granted permanent legal custody of K.B. to the Montana Department of Public Health and Human Services, Child and Family Services Division (the Department). We reverse and remand for proceedings consistent with this Opinion.
¶2 Mother presents the following issue for review:
Did the District Court err when it terminated Mother's parental rights based on *1044 the conditional relinquishment Mother executed in a prior proceeding?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 K.B. is the child of Mother and M.E. (Father), who separated while Mother was pregnant with K.B. In July 2012, the District Court adjudicated K.B. as a youth in need of care (YINC), relying on a petition and affidavit from the Department that detailed Mother's alleged abuse and neglect of K.B. and Father's abandonment and neglect of K.B. Mother did not agree with all the factual allegations in the Department's petition, but she agreed to the adjudication of K.B. as a YINC. Father was not involved with the case at that time. In October 2012, Mother agreed to a treatment plan with the Department. The treatment plan's stated goals were to reunify Mother with K.B. and assist Mother in providing long-term stability for her child. In August 2013, however, the Department alleged that Mother had failed to abide by her treatment plan, and it moved to terminate Mother's parental rights. Around the same time, Father reappeared and began working on a treatment plan of his own, intending to gain full custody of K.B.
***216 ¶4 In December 2013, the District Court held a parental rights termination hearing where Mother and the Department discussed the possibility of establishing a parenting plan between Mother and Father versus terminating Mother's parental rights. The parties eventually agreed to Mother signing a conditional relinquishment of her parental rights pursuant to § 42-2-411(1), MCA. The conditional relinquishment provided that Mother would relinquish her parental rights only on the condition that either: (1) Father relinquished his parental rights by December 2014 or (2) the District Court terminated Father's parental rights.
¶5 Over the ensuing months, the Department and Father worked together to successfully complete his treatment plan, and in July 2014, K.B. transitioned into Father's full-time care. While K.B. was in Father's care, Mother maintained regular contact with K.B. and looked after K.B. on occasion when Father had to work. Mother and Father worked on developing a parenting plan during that time, but they never came to an agreement.
¶6 In March 2015, the Department filed a motion to dismiss the case, noting K.B. had successfully been in Father's care since July 2014. The Department stated that because Mother signed a conditional relinquishment and Father's rights had not been terminated, Mother's parental rights were intact. Nevertheless, the Department recommended that the court grant Father full custody of K.B. until Mother and Father could reach an agreement on a parenting plan. The District Court dismissed the case without prejudice.
¶7 Over the next two years, however, the Department received five separate reports containing allegations that Father abused and neglected K.B. In August 2017, the Department investigated a sixth report and concluded it had probable cause to believe Father was subjecting K.B. to severe neglect and physical and sexual abuse. Law enforcement officers arrested Father on charges of partner or family member assault, criminal endangerment, and incest. Around the same time, the Department filed a new petition for adjudication of K.B. as a YINC. The Department also alleged placement with Mother would be contrary to K.B.'s welfare for several reasons, including K.B.'s disclosure that Mother had failed to contact her for over a year. The District Court awarded the Department emergency protective services over K.B. once again.
¶8 Over the next several months, the parties engaged in numerous intervention meetings and conferences. In March 2018, Father relinquished his parental rights, and the District Court entered an order terminating them. The Department then asked the District ***217 Court to terminate Mother's rights based on Mother's December 2013 conditional relinquishment from the prior abuse and neglect case wherein she agreed to relinquish her parental rights if the District Court terminated Father's. Mother subsequently filed a motion to set aside her conditional relinquishment, arguing that due process prevented the court from using the three-year-old conditional relinquishment from a case the court had since dismissed. The Department *1045 responded that unlike Mother's first condition for relinquishment, which provided Mother would relinquish her parental rights if Father relinquished his by December 2014, her second condition, which provided that Mother would relinquish her parental rights if the court terminated Father's, had no time limitation. The District Court agreed with the Department and terminated Mother's parental rights based on the conditional relinquishment. Mother now appeals the court's order terminating her rights.
STANDARD OF REVIEW
¶9 A parent or legal guardian's right to revoke a relinquishment and consent to adoption is governed by statute. In re N.R.A. , 2017 MT 253, ¶ 9, 389 Mont. 83, 403 P.3d 1256. A district court's interpretation and application of a statute is a conclusion of law that we review to determine whether it is correct. In re Adoption of S.R.T. , 2011 MT 219, ¶ 11, 362 Mont. 39, 260 P.3d 177 ; Williams v. Schwager , 2002 MT 107, ¶ 22, 309 Mont. 455, 47 P.3d 839. Likewise, whether a court denied a person her right to due process is a question of constitutional law, for which our review is plenary. In re M.V.R. , 2016 MT 309, ¶ 24, 385 Mont. 448, 384 P.3d 1058.
DISCUSSION
¶10 Did the District Court err when it terminated Mother's parental rights based on the conditional relinquishment Mother executed in a prior proceeding?
¶11 The United States and Montana Constitutions ensure that "[n]o person shall be deprived of life, liberty, or property without due process of law." Mont. Const. art. II, § 17 ; accord U.S. Const. amend. V. Courts must protect a parent's right to the care and custody of her child-a fundamental liberty interest-with fundamentally fair procedures at all stages of termination proceedings. In re B.N.Y. , 2003 MT 241, ¶ 21, 317 Mont. 291, 77 P.3d 189. "Fundamental fairness and due process require that a parent not be placed at an unfair disadvantage during termination proceedings."
***218 In re B.J.T.H. , 2015 MT 6, ¶ 12, 378 Mont. 14, 340 P.3d 557. To avoid placing a parent at an unfair disadvantage and violating her due process rights, district courts must comply with the statutes governing the termination of parental rights. B.N.Y. , ¶ 28 ; see B.J.T.H. , ¶¶ 12-13.
¶12 When the District Court terminated Mother's parental rights based on the December 2013 conditional relinquishment, it violated her due process rights. First, neither condition in her conditional relinquishment occurred before the court dismissed the first abuse and neglect case in March 2015. Second, because Mother executed the conditional relinquishment as part of a previously-dismissed abuse and neglect case, the District Court could not terminate her parental rights in the new case based on her prior conditional relinquishment.
¶13 A parent may voluntarily relinquish her parental rights and consent to her child's adoption. Section 42-2-401(1), MCA. Section 42-2-411, MCA, allows a parent to make her voluntary relinquishment conditional:
A relinquishment and consent to adopt may provide that it not take effect only if:
(a) the other parent does not execute a relinquishment and consent to adopt within a specified period; or
(b) a court decides to not terminate another individual's parental relationship to the child.
Section 42-2-411(1), MCA. The language of the statute operates in three distinct ways. First, the statute's "not take effect" language means that a parent may make her otherwise valid relinquishment conditional so that it is ineffective unless one of the events-which both involve the other parent keeping his rights-occurs. Second, the statute's "only if" language limits a parent to conditioning her relinquishment on the two events described in § 42-2-411(1)(a) and (b), MCA. A parent may not condition her relinquishment on the occurrence of any other event that the statute does not expressly provide for. Section 42-2-411(2), MCA. The statutory language allows a parent to incorporate both events, but she may also choose to incorporate just one. Third, the statute's use of the disjunctive "or" means that a relinquishment will *1046 not take effect if either § 42-2-411(1)(a) or (b), MCA, occurs.
¶14 Whittled down, the statute provides that a parent may condition her relinquishment of her parental rights on whether the second parent retains or loses his parental rights. If the second parent retains his rights, the first parent also retains her rights because her conditional relinquishment does not take effect. If the second parent loses his rights-voluntarily or involuntarily-the first ***219 parent also loses her rights because the conditional relinquishment does take effect. Section 42-2-411, MCA, allows the first parent, who recognizes her own inability to adequately care for the child, to ensure that the child is not placed with the second parent, whom she may believe is even less capable than herself to care for the child. Conditioning a relinquishment to a limited period of time, either a specific date as provided for in § 42-2-411(1)(a), MCA, or by the timeframes imposed by operation of the abuse and neglect statutes implicit in § 42-2-411(1)(b), MCA, protects against an indefinite application of a parent's conditional relinquishment.
¶15 Mother's conditional relinquishment provided that her relinquishment would take effect if either one of two events occurred:
This is a conditional relinquishment and consent made in accordance with Mont. Code Ann. § 42-2-411(1). Before the Court executes an order terminating my parental rights either: [Father] must first execute a relinquishment and consent to adopt by December 2014; or this Court must first terminate [Father's] parental rights to [K.B.].
(Emphasis in original.) Accordingly, Mother's relinquishment would "not take effect" unless and until Father first executed a relinquishment of his rights or the court first terminated his rights involuntarily. As neither condition occurred prior to the dismissal and closure of the first proceeding, Mother's relinquishment never took effect. Therefore, at the conclusion of the prior proceeding, Mother's conditional relinquishment was not effective, and her parental rights remained intact because the court did not terminate Father's parental rights. Finally, had Father's rights been terminated in the prior proceeding through voluntary relinquishment or involuntary termination by the Court, thereby making Mother's relinquishment effective, Mother could have petitioned to have her relinquishment set aside. Section 42-2-417, MCA. Section 42-2-411, MCA, by allowing for time-sensitive events-either through a specific date as provided in § 42-2-411(1)(a), MCA, or by the timeframes implicit in a termination proceeding § 42-2-411(1)(b), MCA -protects a parent against an indefinite application of her conditional relinquishment.
¶16 We turn now to consider the District Court's use of Mother's conditional relinquishment from a closed and dismissed earlier proceeding to effectuate a termination of Mother's parental rights in a subsequent proceeding. Section 41-3-424, MCA, provides that a court must dismiss an abuse and neglect case when the Department reunites a child with her parents, at least six months pass without additional confirmed reports of abuse and neglect, and the Department ***220 "determines and informs the court that the issues that led to department intervention have been resolved and that no reason exists for further department intervention or monitoring." A dismissal in an abuse and neglect case has the effect of terminating the Department's temporary legal custody of the child and the District Court's jurisdiction over the matter. In re S.S. , 2012 MT 78, ¶ 10, 364 Mont. 437, 276 P.3d 883 ; see In re A.C. , 2004 MT 320, ¶ 17, 324 Mont. 58, 101 P.3d 761 (holding that a district court's order placing the children in their noncustodial parent's care and dismissing the abuse and neglect case "reliev[ed] the Department from any further obligation, as the concern for them being youths in need of care was eliminated by such placement"); In re B.P. , 2008 MT 166, ¶¶ 26-28, 343 Mont. 345, 184 P.3d 334 (Leaphart, J., dissenting) (contending a district court's final custody order was a final judgment for purposes of appeal and resolved all proceedings in the case).
¶17 The dismissal of an abuse and neglect case represents the case's final resolution and allows the parents, the Department, and the child to move on. The Department may later file a new petition for the *1047 same child based on newly alleged abuse or neglect. The district court may take judicial notice of the old proceedings, but the new petition commences an entirely new case-one that is separate and distinct from the former. Therefore, before a district court may terminate a parent's rights based on the new petition, due process requires the court to provide each of the statutory and procedural safeguards that attach to all abuse and neglect proceedings, even if the court previously carried out some of the procedural requirements in the prior case. For example: the Department must file a new petition, § 41-3-422, MCA ; the Department must once again meet certain service of process and notice requirements, § 41-3-428, MCA ; and the court must conduct subsequent hearings according to the procedural requirements of Title 41, chapter 3, MCA.
¶18 These safeguards apply any time the Department files a new petition alleging abuse and neglect. When a parent signs a conditional relinquishment in an abuse and neglect case, due process limits the conditional relinquishment's application to that case alone. If the district court dismisses the case without invoking the parent's conditional relinquishment or otherwise terminating the parent's rights, the dismissal vacates the conditional relinquishment. The district court may not later incorporate the conditional relinquishment into a new case-doing so violates the parent's due process rights. If the parent agrees to conditionally relinquish her rights in the new case, she must sign a new conditional relinquishment.
***221 ¶19 In this case, the District Court violated Mother's due process rights by terminating her parental rights based on the conditional relinquishment. Mother signed the conditional relinquishment in December 2013. When the District Court dismissed that case in March 2015, Mother's parental rights remained intact, and the case's dismissal vacated Mother's conditional relinquishment. The Department commenced a new case in August 2017 when it submitted a new petition alleging Father committed acts of abuse and neglect against K.B. From there, the District Court needed to follow the specific procedures set forth in Title 41, chapter 3, MCA, to protect Mother's parental rights. The District Court erred and violated Mother's due process rights when it relied on Mother's December 2013 conditional relinquishment to terminate her parental rights in the new proceeding.
CONCLUSION
¶20 The District Court erred and violated Mother's due process rights for two reasons. First, neither condition in Mother's conditional relinquishment occurred before the District Court dismissed the first abuse and neglect case in March 2015. Mother's conditional relinquishment therefore never became effective. Second, the procedural and statutory safeguards that attach to an abuse and neglect proceeding precluded the District Court from using a conditional relinquishment from a previously-dismissed abuse and neglect case to terminate Mother's parental rights. When the District Court based its termination on the conditional relinquishment in the new case, it violated Mother's due process rights. We accordingly reverse the termination of Mother's parental rights and remand the case with instructions for the District Court to proceed without applying Mother's December 2013 conditional relinquishment to the current proceedings.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER
JIM RICE, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.